**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

UCS TRADING INC.

                          Plaintiff,

        v.

ZEV D. DEUTSCH; YASMINA
BENMASSAOUDI; and THE MOROCCAN DEAL
INC.,

                         Defendants.

---------------------------------------------------------------- x

Case No. 1:25-cv-06662

*CORRECTED* COMPLAINT

**<u>JURY DEMAND</u>**

Plaintiff UCS Trading Inc. ("Plaintiffs"), by and through its counsel, for its Complaint against Zev D. Deutsch ("Deutsch"), Yasmina Benmassaoudi ("Benmassaoudi"), and The Moroccan Deal Inc. ("Moroccan Deal") (collectively, "Defendants"), allege as follows:

**NATURE OF THIS ACTION**

1. Defendants are fraudsters that manipulate and take advantage of vulnerable parties.

2. Plaintiff is one of many parties duped by Defendants into transferring substantial sums of money to Defendants in connection with non-existent investments. When the schemes are uncovered, Defendants threaten their victims with legal action and disappear.

3. Plaintiff seeks monetary damages for Defendants' breach of contract, unjust enrichment and fraudulent inducement.

## PARTIES

4. Plaintiff is a corporation and existing under the laws of the State of New York, with a principal place of business at 5308 13th Avenue, Suite 415, Brooklyn, New York 11219.

5. On information and belief, Defendant Deutsch is an individual that resides at 20291 NE 30th Ave, Miami, FL 33180.

6. On information and belief, Defendant Benmassaoudi is an individual that resides at 20291 NE 30th Ave, Miami, FL 33180.

7. On information and belief, Defendant Moroccan Deal was a corporation organized and existing under the laws of the State of Florida and maintained a principal place of business at 879 Northeast 195th Street, Unit 228 Miami, Florida 33179.

8. On information and belief, Defendants Deutsch and Benmassaoudi were the owners, officers and agents of Moroccan Deal.

9. On information and belief, Defendant Moroccan Deal was administratively dissolved by the Florida Division of Corporations, yet, continued to conduct business.

10. On information and belief, Defendants operate a slew of inter-related business, including: Rexi Ventures Inc., Rexi Talent, Rexi Group, Rexi Brands, Rexi Solutions Inc., Pet Life Project, Rose Garden Advisors, ZYD Holdings, Zev Deutch Equity Group and Voyage De Luxe LLC.

11. On information and belief, all of the above businesses are fronts for similar fraudulent schemes.

## JURISDICTION AND VENUE

12.     This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1), as the parties are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

13.     Defendants are subject to general and specific jurisdiction in this Court, inter alia, because they conduct business in the District and have committed at least some of the acts complained of herein within this District.

14.     Defendants have entered into contracts with New York residents, including Plaintiff, and have otherwise availed themselves of the privilege of doing business in the State of New York.

15.     Venue in this District is proper under 28 U.S.C. §1391(b) because Defendants do business and have committed at least some of the acts complained of herein, within this District.

## BACKGROUND FACTS

16.     Plaintiff owned and operated a successful e-commerce business that distributed consumer electronics, among other things.

17.     Plaintiff primarily sold its goods through an Amazon.com ("Amazon") storefront.

18.     In July 2024, Plaintiff's Amazon account was unexpectedly suspended, trapping Plaintiff's funds and inventory, and bringing Plaintiff's business to a standstill.

19.     In early 2025, Plaintiff's owner was introduced to Defendant Deutsch, who claimed that he had assisted other suspended Amazon sellers in recovering their funds and inventory from Amazon, as well as seeking damages from Amazon.

20.     On information and belief, Defendant Deutsch did not have any experience handling Amazon suspension matters and provided fictitious references to defraud Plaintiff.

21.     As a result of Defendant Deutsch's representations, Plaintiff agreed to allow Defendant Deutsch to assist with its Amazon suspension.

**DEFENDANTS ENGAGED IN A SCHEME TO DEFRAUD PLAINTIFF**

22.     Aware of Plaintiff's dire financial situation, Defendants engaged in a scheme to defraud Plaintiff under the premise of lucrative investments.  As it turned out, there were no investments and Defendants were simply looking to obtain Plaintiff's funds under false pretenses.

23.     Specifically, in approximately August of 2025, Defendant Deutsch represented to Plaintiff that, through Defendant Moroccan Deals, Defendant Deutsch was engaged in the sale of electronics in the country of Morocco.

24.     Defendant Deutsch represented to Plaintiff that he, together with his wife, Defendant Benmassaoudi, were able to purchase large quantities of Apple iPhone 17s from Verizon Wireless, on a wholesale basis, for resale in Morocco.  In this regard, Defendants provided Plaintiff with an agreement between Verizon Wireless and Defendant Benmassaoudi, through which the purchase could allegedly be made.

25.     Defendant Deutsch represented to Plaintiff that, for a $350,000 investment, Defendant would provide a "guaranteed" return of ten percent (10%) within 30 days from date that the funds were received, with the possibility of up to twenty percent (20%) return.

26.     Defendants participated in multiple calls with Plaintiff and Deutsch regarding the purported investment and drafted the "Investment Agreement" ("Agreement") memorializing the terms.

27.     A required by the Agreement, Plaintiff transferred a total of $350,000 to Defendants, comprising wire transfers of: (1) $120,000 and $58,000 on August 28, 2025; and (2) $123,800 and $48,200 on September 2, 2025.

28. Pursuant to the Agreement, a lump sum payment was due to Plaintiff thirty days (30) days after receipt of the funds, which would include the initial investment amount, plus at least a ten percent (10%) return, i.e., a total of $385,000.

29. In the weeks that ensued, Defendants refused to provide any updates on the purported investment. And after the thirty-day period passed, Defendant Deutsch informed Plaintiff that "you will not be receiving any funds from me" and threatened legal action against Plaintiff should Plaintiff attempt to recover any of the funds from Defendants.

30. Plaintiff subsequently learned that Defendants have engaged in similar schemes and defrauded numerous other businesses and individuals.

31. Specifically, Defendants target those down on their luck who are in dire need of a successful investment.

32. On information and belief, Defendant Deutsch is a compulsive gambler and used the stolen funds to support his habit.

33. After Defendants refused to return Plaintiff's funds and cut off all communications, Plaintiff sought assistance from its payment provider. The provider was able to recall $126,062.12 and return the funds to Plaintiff.

34. The remaining funds transferred to Defendants could not be recalled.

35. On information and belief, Defendants' bank accounts were closed or suspended due to fraudulent activity.

**DEFENDANTS DEUTSCH AND BENMASSAOUDI ARE PERSONALLY LIABLE**

36. The Agreement, which was nothing more than a sham devised by the Defendants, identifies Plaintiff and Defendant Moroccan Deal as the Parties to the transaction.

37. However, as noted above Moroccan Deal is inactive and has been administratively dissolved.

38. Pursuant to Florida Statute, **FL Stat § 617.1421 (2024),**

A director, officer, or agent of a corporation dissolved pursuant to this section, purporting to act on behalf of the corporation, is personally liable for the debts, obligations, and liabilities of the corporation arising from such action and incurred subsequent to the corporation's administrative dissolution only if he or she has actual notice of the administrative dissolution at the time such action is taken….

39. Defendants Deutsch and Benmassaoudi are directors, officers and/or agents of Defendant Moroccan Deal.

40. On information and belief Defendants Deutsch and Benmassaoudi had actual of the company's dissolution at the time that they entered into the Agreement, accepted Plaintiff's funds, breach the Agreement, misappropriated Plaintiff's funds and threatened Plaintiff with legal action in attempt to silence Plaintiff.

**COUNT I – BREACH OF CONTRACT**
**(as to Moroccan Deal, Deutsch and Benmassaoudi)**

41. Plaintiffs reallege and incorporate all previous paragraphs.

42. On or about August 26, 2025, Plaintiff entered into the Agreement with Defendant Moroccan Deal.

43. The Agreement called for a payment by Plaintiff of $350,000.

44. The Agreement stated that "The Company shall exclusively use such funds to acquire new, authentic iPhones 17 for resale and shall maintain clear accounting records of such use."

45. The Agreement "guaranteed" a return of the principal, plus ten percent (10%), within thirty (30) calendar days of receipt of the funds.

46. Plaintiff remitted the funds by no later than September 2, 2025.

47. Defendant Moroccan Deal failed to remit the payment.

48. On information and belief, Defendant Moroccan Deal did not use the funds to purchase iPhones.

49. On information and belief, Defendants used the funds for personal expenditures and never intended to purchase iPhones.

50. Defendants have never provided Plaintiff with any accounting records showing how the funds were used.

51. Defendants informed Plaintiff that they would not be returning any of Plaintiff's funds.

52. The Agreement is a valid and enforceable contract.

53. Plaintiff substantially performed all of its obligations under the Agreement.

54. Defendants breached the Agreement.

55. As a result of the foregoing breach, Plaintiff suffered lost profits, out-of-pocket costs and expenses.

56. As a direct and proximate result of Defendants breach of the Agreement, Plaintiff suffered damages in an amount to be determined at trial, plus pre-judgment interest.

**COUNT II – UNJUST ENRICHMENT**
**(as to Moroccan Deal, Deutsch and Benmassaoudi)**

57. Plaintiffs reallege and incorporate all previous paragraphs.

58. As set forth supra, Plaintiff paid to Defendants $350,000 as part of the Agreement.

59. Defendants accepted these payments and agreed to timely deliver the principal, plus a return, within thirty (30) days.

60. Defendants failed to remit payment to Plaintiff and, instead, informed Plaintiff that they will keep Plaintiff's money.

61. It is against equity and good conscience to permit Defendant to retain the payments given that Defendants failed to carry out any of the terms of the Agreement.

62. By reason of the foregoing, Defendants have been unjustly enriched at Plaintiff's expense in an amount to be determined at trial, plus pre-judgment interest.

## COUNT III – FRAUDULENT INDUCEMENT
### (as to Moroccan Deal, Deutsch, Benmassaoudi, Formagio)

63. Plaintiffs reallege and incorporate all previous paragraphs.

64. As alleged supra, Defendants represented that they were able to purchase large quantities of iPhones in the United States and resell the phones in Morocco.

65. On information and belief, Defendants did not have the ability to make such purchases.

66. On information and belief, Defendants never intended to purchase iPhones using Plaintiff's funds.

67. On information and belief, upon receiving Plaintiff's funds, Defendants did not attempt to purchase iPhones.

68. On information and belief, Defendants used Plaintiff's funds for their own personal benefit and enjoyment.

69. In furtherance of the fraud, Defendant Deutsch personally made the above representations, including during phone conferences in August 2025.

70. In furtherance of the fraud, Defendant Benmassaoudi supplied fraudulent documentation purporting to show her ability to purchase the above goods.

71. Based on these representations, which were false, Defendants were able to lull Plaintiff into entering the Agreement and transferring $350,000 to Defendants.

72.     Defendants were aware that, but for these misrepresentations, Plaintiff would not have entered in the Agreement or transferred any funds to Defendants.

73.     Upon information and belief, Defendants knew that the foregoing misrepresentations were false at the time that they were made.  Unbeknownst to Plaintiff at that time, but as Defendants well-aware when they negotiated the Agreement with Plaintiff in August 2025, Defendants had no intention of repaying Plaintiff under the agreed terms or otherwise.

74.     Plaintiff reasonably relied upon Defendants' misrepresentations in entering into the Agreement.

75.     By virtue of Defendants' misrepresentations, Plaintiff suffered damages in an amount to be determined at trial, plus punitive damages and pre-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs pray for judgment as follows:

1.      An award of all damages that Plaintiffs have suffered as a result of Defendants' breach of contract;

2.      An award of all damages that Plaintiffs have suffered as a result of Defendants' unjust enrichment;

3.      An award of all damages that Plaintiffs have suffered as a result of Defendants' fraudulent inducement;

4.      An award of all costs and fees, including attorneys' fees, incurred in this Action; and

5.      Such other and further relief as the Court shall find just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Dated: December 9, 2025

Respectfully submitted,

TARTER KRINSKY & DROGIN LLP

By: *s/ Mark Berkowitz*
Mark Berkowitz
1350 Broadway
New York, NY 10018
Tel.: (212) 216-8000
Fax: (212) 216-8001
E-mail: mberkowitz@tarterkrinsky.com

***Attorneys for Plaintiff***